[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff filed the instant action alleging that the defendant failed to properly repair the main oil seal, damaged the axle seal and damaged the transmission of the plaintiff's automobile. Additionally, the plaintiff alleges that the defendant committed larceny by retaining the sum of $400 and a gold chain delivered to him for payment of said repairs.[1] Finally, the plaintiff alleges that the defendant slandered him by accusing him of larceny for his actions in retrieving the money and gold chain from the defendant.
A cross complaint was subsequently filed by the defendant and, pursuant to General Statutes § 52-549u, the entire matter was heard by an arbitrator.[2] After the arbitrator rendered an unfavorable decision, the plaintiff, pursuant to Practice Book § 23-66, filed a claim for a trial de novo. On the eve of trial, the plaintiff disclosed three expert witnesses, and the court, Peck, J., granted the defendant's motion to preclude the testimony of those experts on the grounds that the disclosure was untimely and prejudicial. On June 16, 1999, the plaintiff filed a withdrawal form indicating that the matter was being withdrawn because "defendant's motion to preclude plaintiff's experts, granted." In response, the defendant withdrew his cross-complaint.
On July 20, 1999, the plaintiff filed a second suit, CV 99-0591161, returnable August 10, 1999, alleging essentially the same causes of action but renaming them to include the theories of misrepresentation and a violation of the unfair trade practices act. The defendant has now filed motions in both cases. The motion in this case seeks to reinstate the action, and the other motion seeks to dismiss that second action. Essentially, the defendant argues that the plaintiff should not be allowed to circumvent the court's order precluding his expert witnesses by merely withdrawing and then re-filing the complaint.
At the heart of this debate is General Statutes § 52-80, which states, in relevant part, that "the plaintiff may withdraw any action so returned to and entered in the docket of any court, before the commencement of a hearing on the merits thereof." The issue herein is whether this right may be asserted and utilized to avoid or, as noted by the defendant, to actually circumvent a trial court's unfavorable rulings.
In Lusas v. St. Patrick's Roman Catholic Church Corp., 123 Conn. 166,193 A. 204 (1937), our Supreme Court noted that "unless [a voluntarily withdrawn case] is restored to the docket [the court] cannot proceed with it further but, the action still being in court, it has not gone entirely beyond the jurisdiction of the court to act in it." Id., 170; see alsoCFM of Connecticut, Inc. v. Chowdhury, 239 Conn. 375, 389, 685 A.2d 1108
CT Page 9939 (1996).[3] Indeed, the court in Lusas went on to state that "[t]here is no reason why the court has not jurisdiction upon a proper showing to restore to the active docket a case which has been voluntarily withdrawn, just as it can open a judgment or restore to the docket a case which has been erased." Id.; see Matey v. Waterbury, 24 Conn. App. 93,97, 585 A.2d 1260 (1991), cert denied, 218 Conn. 908, 588 A.2d 1382
(1991).
In Sicaris v. City of Hartford, 44 Conn. App. 771, 779, 692 A.2d 1290, cert. denied, 241 Conn. 916, 696 A.2d 340 (1997), the appellate court remarked that "the question of whether a case should be restored to the docket is one of judicial discretion." The court also recognized, however, that "[t]he right of a plaintiff to withdraw his action before a hearing on the merits, as allowed by 52-80, is absolute and unconditional." Id., 775-76. Nonetheless, courts have noted, General Statutes § 52-80 notwithstanding, that permissive withdrawal must not be abused.
For example, in Kantrowitz v. Clipfel, 21 Conn. Sup. 371, 155 A.2d 59
(1959), the court restored a case to the docket that had been withdrawn on the day of the court trial, having been stricken from the jury docket for an untimely filing, and subsequently re-filed as a jury case that same day, stating that this raised "a serious question of abuse of the privilege granted to a litigant under our law." Id., 373. The court also stated that "substantial rights of the defendants were acquired by reason of the action, including but not limited to their right, under the circumstances revealed by the files to this court, to a speedy trial of the issues already framed and to the recovery of their costs." Id., 373. A similar result was also reached in Hughes v. Carmody Torrance,
Superior Court, judicial district of Waterbury, Docket No. 128305 (October 15, 1996, Leheny, J.) (18 Conn.L.Rptr. 24, 25), where the court also granted the defendant's motion to restore holding that "the plaintiff has used the withdrawal privileges set forth in General Statutes § 52-80 in an attempt to circumvent the [statutory] time mandates . . . ."
The court in Matey v. Waterbury, supra, 24 Conn. App. 97, also addressed the issue of rights acquired by a defendant in an action. TheMatey court held that the state second injury fund should have been entitled to intervene in a case which was withdrawn by the plaintiff prior to trial where, had the fund been allowed to intervene, the plaintiff could not have withdrawn without the fund's consent. Therefore, the Appellate Court directed the trial court to grant the fund's motion to intervene subject to its exercise of discretion in allowing the motion to restore. Id., 99. CT Page 9940
In contrast, the court in Lytwinick v. Lytwinick, 21 Conn. Sup. 497,157 A.2d 494 (1959), in denying the defendant's motion to restore, found that no rights of the defendant had been destroyed or impaired at the time of the withdrawal in a divorce action. The court noted, however, that "there is no doubt that the court should exercise its discretion to restore a case to the docket for further action upon such a motion if rights of the defendant acquired by reasons of such action would be injuriously affected by such withdrawal." Id., 500. Also in contrast, the court in Liberty Mutual v. Racine, Superior Court, judicial district of Waterbury, Docket No. 144319 (November 23, 1999, Pellegrino, J.), in denying the defendant's motion to restore, held that the defendant's claimed right to obtain certain discovery was not "injuriously affected by the plaintiff's withdrawal."
Finally, in Nationwide Mutual Ins. Co. v. Blesso, Superior Court, judicial district of New Britain, Docket No. 485520 (May 11, 1999,Shortall, J.) (24 Conn.L.Rptr. 541), the court acted favorably on a motion to restore where the plaintiff, after a motion to sever with a consolidated case had been denied, withdrew the case it had filed some 20 months previous. The court stated that "it is impossible to escape the conclusion that the court's rulings . . . were the major, if not the only, reason for the withdrawal . . . ." Id., 542. In granting the motion to restore, the court held that the plaintiff should not be allowed "to defeat the defendants' right to a speedy, unified resolution of the serious issues raised by this action . . . ." Id.
The present case is really no different. As noted, supra, this matter was dated September 6, 1996, and it was withdrawn on June 16, 1999, after some 33 months on the docket. A cross complaint had been filed, discovery had been conducted and the matter had been arbitrated. After the unfavorable arbitrator's decision, and prior to the trial management conference, the plaintiff disclosed his three expert witnesses — just 21 days prior to trial. Surely, the defendant had acquired substantial rights after briefing and arguing its successful motion to preclude the three expert witnesses disclosed more than one year after the pleadings were closed, after prevailing at the arbitration and after preparation for the trial. The plaintiff's tactical use of the withdrawal constituted an abuse of the litigant's privilege, especially when it was used solely to avoid an order of the court, and it clearly has a prejudicial effect on the opposing side. See Kantrowitz v. Clipfel, supra, 21 Conn. Sup. 373;Nationwide Mutual Ins. Co. v. Blesso, supra, 24 Conn.L.Rptr. 541-42.
The court surely notes that to hold otherwise would allow a litigant to manipulate and abuse the orderly and beneficial caseflow process, which enables difficult evidentiary and procedural issues to be decided prior to trial. Such a system is obviously of great benefit to litigants in CT Page 9941 preparing for trial since they will know whether a witness may testify or evidence will be admitted. To allow litigants to disingenuously utilize General Statutes § 52-80, after receiving a negative result, is clearly questionable. Undoubtedly, all such motions could be left to the commencement of trial in which case, a withdrawal could only occur with leave of court. Such a policy, however, is surely counter productive; yet, it would certainly police such actions as those involved in the present case.
Finally, the court also notes and is mindful that General Statutes § 52-81 specifically allows a judgment for costs to enter for a defendant upon a withdrawal. That provision, however, certainly does not address the issue of the defendant's rights as presented in this case and discussed above.
Accordingly, for the above reasons, the defendant's motion to reinstate is granted.
Berger, J.