******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CAROL PALUMBO *v.* ARIS N. BARBADIMOS ET AL.
(AC 36753)

Keller, Prescott and Mullins, Js.

*Argued October 23, 2015—officially released February 16, 2016*

(Appeal from Superior Court, judicial district of
Ansonia-Milford, Markle, J.)

*Justin E. Theriault*, with whom, on the brief, was *Michael J. Soltis*, for the appellant (named defendant).

*John-Henry M. Steele*, for the appellee (plaintiff)

PRESCOTT, J. The issue raised in the present appeal is whether the defendant was entitled to have a civil action restored to the docket because the plaintiff had withdrawn the action unilaterally and filed a second, identical action to avoid a bench trial that was the consequence of the plaintiff having missed the statutorily prescribed deadline for claiming the action to the jury trial list. The defendant physician, Aris N. Barbadimos, filed this appeal from the trial court's denial of his motion to restore to the docket a tort action brought against him by the plaintiff, Carol Palumbo.[1] The record reveals that after the plaintiff failed to request that her case be placed on the jury trial list within the time frame set forth in General Statutes § 52-215,[2] she filed a second, identical action (second action) against the defendant and subsequently withdrew the action underlying the present appeal (original action).

The defendant claims that the trial court abused its discretion when it denied his motion to restore the original action to the docket because, by allowing the plaintiff to withdraw the original action and to file a second action solely to avoid the consequences of her failure to comply with § 52-215, the court unfairly prejudiced the defendant, allowed the plaintiff to circumvent a court order, and effectively rendered the statutory time limits in § 52-215 meaningless. Although we are mindful that a plaintiff enjoys a right to withdraw litigation unilaterally prior to a hearing on an issue of fact; see General Statutes § 52-80; *Housing Authority* v. *Hird*, 13 Conn. App. 150, 156–57, 535 A.2d 377, cert. denied, 209 Conn. 825, 552 A.2d 433 (1988); we nonetheless conclude that the procedural chicanery engaged in by the plaintiff here cannot be sanctioned because it offends the orderly and due administration of justice. At the time the plaintiff withdrew the original action, she effectively had waived her right to elect a jury trial, and thereby vested in the defendant the right to have the parties' dispute tried to the court. The plaintiff was not entitled to abuse her right of unilateral withdrawal in order to pursue a second, identical action to avoid the consequences of her waiver. Under the circumstances presented here, we conclude that the court improperly denied the defendant's motion to restore the original action to the docket. Accordingly, we reverse the judgment of the trial court and remand the matter with direction to grant the defendant's motion to restore the original action to the docket.

The record reveals the following relevant facts and procedural history. The plaintiff initiated the original action in December, 2012. The operative, second revised complaint was filed on April 1, 2013, and consisted of one count of assault directed against the defendant and four counts of negligence directed at her employer, Premier Medical Group, P.C. (Premier). See

footnote 1 of this opinion. All counts brought against Premier eventually were stricken.[3]

On June 26, 2013, the defendant filed an answer to the complaint, denying the allegations underlying the remaining count and asserting two special defenses.[4] The plaintiff filed a reply on August 21, 2013, denying all allegations contained in the defendant's special defenses. As of that date, the pleadings were closed. See *Doublewal Corp.* v. *Toffolon*, 195 Conn. 384, 387 n.2, 488 A.2d 444 (1985); see also Practice Book § 10-8. Neither party, however, filed a certificate of closed pleadings in accordance with Practice Book § 14-8,[5] nor did the plaintiff claim the matter for a jury trial in accordance with Practice Book § 14-10[6] and General Statutes § 52-215.

On December 3, 2013, approximately ninety-four days after the expiration of the period in which the case could be claimed to the jury trial list, the plaintiff filed a withdrawal form, on which she indicated that she was withdrawing her August 21, 2013 reply to the special defenses. Two days later, the defendant filed an objection to the withdrawal. In his objection, the defendant first argued that the reply to the special defenses was not a "motion" as that term is defined in our rules of practice, and, therefore, that the reply could not be withdrawn as a "motion" as indicated on the withdrawal form.[7] Second, the defendant argued that a reply to special defenses is a mandatory, responsive pleading, like an answer to a complaint, and, as such, it could not be unilaterally withdrawn. The defendant maintained that the plaintiff was attempting to withdraw the reply in order to "reopen" the pleadings, to which the defendant also objected.

The plaintiff filed a reply to the objection on December 9, 2013. She argued that the rules of practice did not explicitly prohibit the withdrawal of a reply to special defenses prior to the filing of a certificate of closed pleadings. She contended that, because no certificate had been filed in the present case, she was entitled to withdraw her pleading as of right. The plaintiff provided no explanation as to why she wanted to withdraw her reply to the special defenses. The court, *Brazzel-Massaro, J.*, issued a decision on December 26, 2013, stating that, on the basis of its review of the objection and the reply to the objection, it was sustaining the defendant's objection to the withdrawal.

On January 6, 2014, the plaintiff commenced the second action against the defendant. The second action consisted of a single count of assault based upon the identical allegations asserted in the original action.[8] On January 21, 2014, the plaintiff filed a voluntary withdrawal of the original action.

On February 3, 2014, the defendant filed a motion to restore the original action to the docket and a memoran-

dum of law in support of that motion. According to the defendant, restoring the original action to the docket was appropriate here because the plaintiff had withdrawn the action and had filed an identical action in order to circumvent her failure to claim the original action to the jury trial list and effectively to evade the court's decision not to allow her to withdraw her reply to the special defenses, which would have had the effect of opening the pleadings and thus resetting the time in which she could have claimed the matter for a jury trial.

Attached as an exhibit to the memorandum of law in support of the motion to restore was a copy of an e-mail exchange between counsel for the defendant, Justin M. Theriault, and counsel for the plaintiff, Edmund Q. Collier. The e-mail exchange ends with the following response by Collier to Theriault's inquiry about a proposed deposition date for the defendant: "Justin, I am going to withdraw the case. [The defendant] has been served with a new writ. *I did want a jury and your objection was sustained.* Thanks. Ned." (Emphasis added.) The court granted the defendant's request for oral argument on the motion to restore, setting a hearing date for March 3, 2014. Prior to the hearing, the plaintiff filed nothing in response to the defendant's motion to restore the case to the docket.

At the hearing on March 3, 2014, the court first heard from the defendant, who briefly reiterated the arguments made in his motion to restore, drawing the court's attention to the cases cited therein. Neither party sought an evidentiary hearing on the motion. In response to the defendant's argument, the plaintiff indicated that she had not filed any opposition to the motion to restore because her position was fairly straight forward: "It is my case; I can withdraw it." The plaintiff argued that whatever motivation she may have had for withdrawing the original action, that was not something that the court should consider in deciding whether to restore the action to the docket. The plaintiff never raised any objection regarding the e-mail exchange submitted by the defendant, challenging neither its authenticity nor the court's authority to use it as evidence of the plaintiff's motive for withdrawing the original action.[9] Instead, she appeared to argue that her motive was irrelevant.

The plaintiff was unable to cite to any precedent in support of her legal position and stated that she had no response to the cases cited by the defendant. When asked by the court whether she intended to file a written opposition to the motion to restore or to submit any case law, the plaintiff indicated that she was not inclined to file a written response, but she thought that she recalled a case that supported her position and asked to have until the close of business that day to provide the court with a citation. The court responded that it would give the plaintiff until March 10, 2014, to

file a written objection to the motion to restore, following which it would issue a ruling.

On March 11, 2014, the plaintiff filed a three sentence objection, stating in relevant part that "[t]he plaintiff objects to the defendant's motion to restore to docket pursuant to [General Statutes §] 52-80 which the [plaintiff] suggests is dispositive."[10] In response to the plaintiff's objection, the defendant filed a reply in which he noted that the objection did not cite to any case law or attempt to address the cases that he had raised, each of which had acknowledged § 52-80, but held nonetheless that courts have the authority to restore cases to the docket in order to prevent a plaintiff from abusing the right of withdrawal.

On April 7, 2014, the court issued an order denying the defendant's motion to restore the original action to the docket. This appeal followed. In response to a motion for articulation filed by the defendant, the court later issued a memorandum setting forth the factual and legal basis for its decision. According to the court, the defendant had failed to establish that he had any vested right in a bench trial. The court relied, at least in part, on the fact that even if a plaintiff fails to claim a case to the jury docket, the trial court nevertheless retains discretionary authority to place the case on the jury docket "at any time." See General Statutes § 52-215. In sum, the court was not convinced on the basis of the record before it that the original action should be restored to the docket, especially in light of the broad nature of a plaintiff's right to withdraw an action pursuant to § 52-80. With the preceding facts and procedural history in mind, we now turn to the issue raised on appeal.

The defendant claims that the court abused its discretion in denying his motion to restore the original action to the docket. According to the defendant, if this court were to affirm the decision of the trial court, it would "encourage and increase the instances of procedural gamesmanship of this type moving forward, as plaintiffs would be given carte blanche to withdraw and immediately refile actions to avoid statutory requirements." Inherent in the defendant's argument is the notion that he had acquired a right to have this matter tried to the court as a result of the plaintiff's failure to timely claim the matter to the jury docket.[11] The plaintiff, on the other hand, argues that the court's decision to deny the motion to restore was consistent with our statutes and case law. She contends that the court correctly concluded that the defendant had failed to establish that he had a vested right in a bench trial and that the court's conclusion is supported by the fact that the court never rendered any order expressly granting the defendant the right to a bench trial, nor was the original action ever docketed as either a bench trial or a jury trial. Because we conclude, contrary to the trial court and

the plaintiff, that the defendant had a vested right in a bench trial, and because the procedural maneuvers of the plaintiff unduly jeopardized that right and the proper administration of justice, we agree with the defendant that the court abused its discretion by denying his motion to restore the original action to the docket.

We begin our analysis by setting forth our standard of review. This court has stated previously that "[t]he question of whether a case should be restored to the docket is one of judicial discretion"; (internal quotation marks omitted) *Banziruk* v. *Banziruk*, 154 Conn. App. 605, 611, 109 A.3d 494, 498 (2015); therefore, we review a court's denial of a motion to restore a case to the docket for abuse of that discretion. Id.; *Travelers Property Casualty Co. of America* v. *Twine*, 120 Conn. App. 823, 826, 993 A.2d 470 (2010). "Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . Inherent in the concept of judicial discretion is the idea of choice and a determination between competing considerations. . . . A court's discretion must be informed by the policies that the relevant statute is intended to advance." (Citations omitted; internal quotation marks omitted.) *State* v. *Robinson*, 32 Conn. App. 448, 460, 630 A.2d 87 (1993), aff'd, 230 Conn. 591, 646 A.2d 118 (1994). "When reviewing claims under an abuse of discretion standard, the unquestioned rule is that great weight is due to the action of the trial court . . . . Under that standard, we must make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Citation omitted; internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *New London*, 135 Conn. App. 167, 190–91, 43 A.3d 679, cert. denied, 307 Conn. 905, 53 A.3d 220 (2012).

In considering whether the court in the present case improperly declined to restore the original action to the docket, we first must consider the scope of a plaintiff's right to withdraw an action unilaterally. "Under [the] law, the effect of a withdrawal, so far as the pendency of the action is concerned, is strictly analogous to that presented after the rendition of a final judgment or the erasure of the case from the docket. . . . The court unless [the action] is restored to the docket cannot proceed with it further . . . ." (Citation omitted; internal quotation marks omitted.) *Travelers Property Casualty Co. of America* v. *Twine*, supra, 120 Conn. App. 827.

As previously noted, by statute, a "plaintiff may withdraw any action so returned to and entered in the docket of any court, before the commencement of a hearing

on the merits thereof." General Statutes § 52-80. This court often has used, without further explication, the phrase "absolute and unconditional" to describe a plaintiff's right under § 52-80 to withdraw an action before a hearing on the merits has occurred. See *Housing Authority* v. *Hird*, supra, 13 Conn. App. 157; *Sicaras* v. *Hartford*, 44 Conn. App. 771, 775–76, 692 A.2d 1290, cert. denied, 241 Conn. 916, 696 A.2d 340 (1997). We construe this broad language, however, as reflecting only that, prior to a hearing on the merits, the withdrawal of an action does not require the permission of the court. See *Baker* v. *Cordisco*, 37 Conn. App. 515, 521, 657 A.2d 230 (1995) (rejecting assertion that trial court acted improperly by allowing withdrawal of third-party complaint).

The broad language used by this court to describe a plaintiff's right to withdraw an action must be read in conjunction with other cases that make clear that the right of withdrawal may be trumped in certain circumstances by another party's right to restore the case to the docket. See *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 276 Conn. 168, 211–25, 884 A.2d 981 (2005) (trial court properly restored to docket withdrawn cases regarding child sexual abuse by clergy in order to consider intervening newspapers' challenge to protective orders that sealed discovery materials from public); see also *Kendall* v. *Commissioner of Correction*, 162 Conn. App. 23, 29,    A. 3d    (2015) ("plaintiff is generally empowered, *though not without limitation,* to withdraw a complaint before commencement of a hearing on the merits" [emphasis added]).[12] Any lack of authority of the court to stop the withdrawal of an action prior to a hearing on the merits in the first instance, for example, in no way extends to or diminishes the court's power to restore a previously withdrawn action to the docket. See *Lusas* v. *St. Patrick's Roman Catholic Church Corp.*, 123 Conn. 166, 170, 193 A. 204 (1937) (court has power to restore voluntarily withdrawn case to active docket "upon a proper showing"). This is particularly true if restoration of the action is necessary to vindicate a right acquired by another party during the course of the withdrawn litigation.[13] See *Travelers Property Casualty Co. of America* v. *Twine*, supra, 120 Conn. App. 826–28 (rejecting argument that trial court never has discretion to restore action if withdrawn by plaintiff before hearing on merits commences).

In *Bristol* v. *Bristol Water Co.*, 85 Conn. 663, 673, 84 A. 314 (1912), our Supreme Court stated that "[e]very action may be withdrawn prior to verdict or final judgment, *whenever it can be done without injuriously affecting rights of the defendant acquired by reason of the action.*" (Emphasis added.) Our Superior Courts have relied on that language as a basis for restoring cases to the docket in which a plaintiff's voluntary withdrawal threatened a right that was acquired by the

defendant in the withdrawn litigation or was done to undermine an adverse court ruling. See *Rocque* v. *Sound Mfg.*, *Inc.*, Superior Court, judicial district of Hartford, Docket No. CV-99-588424-S (April 9, 2003) (34 Conn. L. Rptr. 502), citing *Kantrowitz* v. *Clipfel*, 21 Conn. Supp. 371, 155 A.2d 59 (1959); *Byrd* v. *Leszcynski*, Superior Court, judicial district of Hartford, Docket No., CV-96-0564351-S (August 25, 2000) (28 Conn. L. Rptr. 88); *Nationwide Mutual Ins. Co.* v. *Blesso*, Superior Court, judicial district of New Britain, Docket No. CV-98-485520 (May 11, 1999) (24 Conn. L. Rptr. 541); see also *Lytwinick* v. *Lytwinick*, 21 Conn. Supp. 497, 500, 157 A.2d 494 (1959) (explaining that "there is no doubt that the court should exercise its discretion to restore a case to the docket for further action upon such a motion if rights of the defendant acquired by reasons of such action would be injuriously affected by such withdrawal").

Although this court previously has affirmed a trial court's denial of a defendant's motion to restore a voluntarily withdrawn action to the docket, in doing so, it also recognized the trial court's inherent authority to restore such an action to the docket if necessary to vindicate a right vested in the defendant. See *Travelers Property Casualty Co. of America* v. *Twine*, supra, 120 Conn. App. 827–28.[14] No appellate court decision, however, has directly addressed under what circumstances a trial court should exercise its discretion to return a voluntarily withdrawn action to the docket.

A plaintiff should never be permitted to abuse its right to voluntarily withdraw an action. Such abuse may be found if, in executing its right of withdrawal, the plaintiff unduly prejudices the rights of an opposing party or the withdrawal interferes with the court's ability to control its docket or to enforce its rulings. It is important that we take this opportunity to clarify that the broad authority granted to a plaintiff pursuant to § 52-80 to unilaterally withdraw an action prior to a hearing on the merits does not automatically extend to the plaintiff the additional right to commence an essentially identical action following that withdrawal if the primary purpose for doing so is to undermine an order of the court rendered in the prior litigation or if the withdrawal and subsequent refiling implicates a substantial right that vested in another party to the litigation and that likely will be jeopardized should the plaintiff proceed with the new action. See id., 828 (holding court properly denied motion to restore action to docket because discovery rights implicated could be addressed in new action). In either instance, if seasonably requested by the defendant or other third party,[15] the court should exercise its discretion to restore the original action to the docket. These principles are in accord with the reasoning of several Superior Court decisions that have restored actions to the docket following a unilateral withdrawal.[16]

In the present case, once the plaintiff filed her withdrawal of the original action, the defendant, within thirteen days, filed his motion to restore the original action to the docket. Accordingly, the defendant timely invoked the court's discretion to restore the withdrawn action to the docket. Our analysis thus turns to whether the record before the court demonstrated that, prior to the plaintiff's withdrawal, the defendant had obtained a right that he was in peril of losing if the original action was not restored to the docket and the defendant was forced to defend the second action. We answer that question in the affirmative.

General Statutes § 51-239b provides: "In civil actions a jury shall be deemed waived unless requested by either party in accordance with the provisions of section 52-215." General Statutes § 52-215 "provides two periods of time within which an issue proper for trial by jury may be entered in the jury docket. One is within thirty days after the return day. The other is contained in the provision which reads, in part, as follows: When . . . an issue of fact is joined, the case may, within ten days after such issue of fact is joined, be entered in the docket as a jury case upon the request of either party made to the clerk . . . . The word when has been construed to mean whenever. . . . The issue must be formed by the pleadings in writing." (Citations omitted; internal quotation marks omitted.) *Amercoat Corp.* v. *Transamerica Ins. Co.*, 165 Conn. 729, 732, 345 A.2d 30 (1974). Thus, "[i]t is well settled that a claim for a jury trial must be filed no later than ten days after the pleadings have been closed." *Masto* v. *Board of Education*, 200 Conn. 482, 488, 511 A.2d 344 (1986). Once the time for claiming a matter to the jury trial list has passed, the case automatically defaults to a trial to the court. If amended pleadings are later filed, this can reopen the ten day period in which to claim a jury trial, but only if the new pleading introduces a new issue of fact into the case. Id.; *Flint* v. *National Railroad Passenger Corp.*, 37 Conn. App. 162, 164–165, 655 A.2d 266 (1995), aff'd, 238 Conn. 282, 679 A.2d 352 (1996).

In the present case, the return date of the original action was January 22, 2013. The plaintiff could have requested that the matter be placed on the jury docket within thirty days of that date. She nevertheless failed to do so, thus missing the first of the two statutory deadlines.

All issues of fact in the original action were joined, at the latest, when the plaintiff filed her response to the defendant's special defenses on August 21, 2013, thereby closing the pleadings. See *Masto* v. *Board of Education*, supra, 200 Conn. 488; see also *Home Oil Co.* v. *Todd*, 195 Conn. 333, 343, 487 A.2d 1095 (1985), citing 2 E. Stephenson, Connecticut Civil Procedure (2d Ed. 1971) § 173 ("where responsive pleading is required . . . the issue is joined when the responsive pleading

is filed" [internal quotation marks omitted]). Accordingly, to avoid missing the second deadline of § 52-215, the plaintiff, at the latest, should have claimed the matter for a jury trial on or before September 2, 2013.[17] The plaintiff failed to do so.

Having failed to comply with either of the time periods set out in § 52-215, the plaintiff waived her right to unilaterally claim her original action to the jury docket. See General Statutes § 51-239b. At that time, the defendant acquired the right to have the parties' dispute decided by the trial court. Although that right was subject to divestment by the trial court should it choose to exercise its own discretion to order a jury trial, the decision to do so was outside the control of the plaintiff and was never requested in this case. It is reasonable to infer from the defendant's choice not to exercise his own right to claim the matter to the jury docket that he perceived some advantage to proceeding with a bench trial and that a divestment of that right by the plaintiff's actions would prejudice him.

On December 3, 2013, approximately three months after the deadline for seeking a jury trial had passed, the plaintiff attempted to withdraw her reply to the defendant's special defenses. The defendant objected, arguing in part that the plaintiff was attempting to reopen the pleadings, perhaps hoping to restart the clock for claiming the matter to the jury docket. The plaintiff filed a reply to the objection in which she provided no alternative explanation for why she sought to withdraw her reply to the special defenses. Shortly after the trial court sustained the defendant's objection to the withdrawal, the plaintiff commenced the second action against the defendant, alleging the same facts and asserting the same cause of action set out in the original action, and then withdrew the original action. Having filed an entirely new action, the time limit for claiming that action to the jury docket had not expired. Accordingly, at the time the original action was withdrawn, the defendant had acquired a right to a bench trial that could no longer be divested unilaterally by the plaintiff, and he was in jeopardy of losing that right if he was forced to litigate the second action.

Having determined that a court has the authority to return a voluntarily withdrawn action to the docket if necessary to protect a right acquired by another party during the course of litigation, and that the defendant in this case had acquired a right to have the parties' dispute litigated in a bench trial, a right he was in peril of losing if the original action was not restored to the docket, we turn to whether the court abused its discretion by denying the defendant's motion to restore the original action to the docket.

The defendant timely moved to restore the original action to the docket arguing that the withdrawal was purely tactical in nature and was designed to bypass

the court's order disallowing the opening of the pleadings. He argued that the sole reason for the withdrawal was to avoid the plaintiff's failure to claim the original action to the jury docket in accordance with § 52-215. That argument was supported by the e-mail response from the plaintiff's counsel that was attached to the defendant's memorandum of law in support of his motion, in which counsel appears to confirm that the reason he filed the second action was because the plaintiff wanted a jury trial, which was no longer possible in the original action, particularly in light of the court's having sustained the defendant's objection to the withdrawal of the plaintiff's reply to the special defenses. In defending against the motion to restore, the plaintiff never provided the trial court with any alternative reason for withdrawing the first action and filing the second action, arguing only that she believed she had the right to do so pursuant to § 52-80 because there had not been a hearing on the merits.

The only reasonable view of the record before the trial court in adjudicating the motion to restore the original action to the docket was that the plaintiff had withdrawn it and had filed the second action to avoid her failure to comply with § 52-215 and to undo her waiver of her right to have the matter placed on the jury docket. Although the trial court found that the "failure to claim the case for a jury trial was the result of mere negligence," we are unable to ascertain the legal significance of that finding. As a result of the plaintiff's waiver and the court effectively having refused to allow her to open the pleadings and to set aside that waiver, the defendant acquired the right to have the parties' dispute adjudicated by the court. That right was placed in jeopardy by the withdrawal of the original action and the initiation of an identical second action.

The defendant's interest in having the original action restored to the docket and tried before the court rather than having to proceed with the inevitable jury trial in the second action is a substantial one. If the defendant is forced to defend the second action, he undoubtedly will incur additional expenses in the form of attorney's fees, costs and other expenses necessary to get the pleadings closed in that action. Moreover, it is undisputed that because of the right to individual voir dire in this state, significant additional expenditures of time and money would be involved in the selection of a jury.

Having thoroughly reviewed the record presented, it is clear that the plaintiff sought to exercise her right of voluntary withdrawal as a procedural tactic to avoid a bench trial, which the defendant had acquired a right to as a result of the plaintiff's waiver. Under those facts, when requested by the defendant to do so, the court should have exercised its authority and restored the original action to the docket. By failing to do so, the

court abused its discretion.

The judgment is reversed and the case is remanded with direction to grant the defendant's motion to restore the original action to the docket and for further proceedings according to law.

In this opinion the other judges concurred.

[1] In her operative complaint, the plaintiff alleges that in January, 2011, while she was employed by the defendant Premier Medical Group, P.C. (Premier), Barbadimos, who also worked for Premier and supervised the plaintiff, grabbed her by the arm, pulled her into an examination room, and sexually assaulted her. Although the complaint also asserted causes of actions against Premier, those counts later were stricken, and, thus, we refer to Barbadimos throughout this opinion as the defendant.

[2] General Statutes § 52-215 provides in relevant part: "In the Superior Court a docket shall be kept of all cases. In such docket immediately following the names of the parties and their attorneys in all jury cases shall be entered the word 'jury'. The following-named classes of cases shall be entered in the docket as jury cases upon the written request of either party made to the clerk within thirty days after the return day . . . civil actions involving such an issue of fact as, prior to January 1, 1880, would not present a question properly cognizable in equity . . . . *When, in any of the above-named cases an issue of fact is joined, the case may, within ten days after such issue of fact is joined, be entered in the docket as a jury case upon the request of either party made to the clerk*; and any such case may at any time be entered in the docket as a jury case by the clerk, upon written consent of all parties or by order of court. . . . All cases not entered in the docket as jury cases under the foregoing provisions . . . shall be entered on the docket as court cases . . . ." (Emphasis added.)

[3] Premier moved to strike all of the counts brought against it on April 16, 2013, arguing that they were preempted pursuant to the exclusivity provision, General Statutes § 31-284 (a), of the Workers' Compensation Act, General Statutes § 31-275 et seq. The plaintiff did not object to the motion to strike or file a memorandum of law in opposition. The court granted the motion to strike, and the plaintiff did not replead or secure a judgment on the stricken counts to appeal the court's ruling. See Practice Book § 61-3.

[4] The first special defense asserted that the complaint failed to state a claim upon which relief could be granted, and the second special defense asserted that the plaintiff's claim was preempted by the exclusivity provision, General Statutes § 31-284 (a), of the Workers' Compensation Act, General Statutes § 31-275 et seq.

[5] Practice Book § 14-8 (a) provides in relevant part: "When the pleadings are closed on the issue or issues in the case as to all parties, an accurate certificate of closed pleadings shall be filed within ten days. Any party may file the certificate. Upon the filing of the certificate of closed pleadings, the case shall be scheduled for a trial as soon as the court's docket permits if it has not already been scheduled for a trial."

[6] Practice Book § 14-10 provides: "All claims of cases for the jury shall be made in writing, served on all other parties and filed with the clerk within the time allowed by General Statutes § 52-215. The jury claim fee shall be paid at the time the jury claim is filed."

[7] A "motion," as that term is used in our rules of practice, is defined as "any application to the court for an order, which application is to be acted upon by the court or any judge thereof . . . ." Practice Book § 11-2. A reply to special defenses is the last pleading listed in Practice Book § 10-6, and it requires no action by the court.

[8] We note that the defendant filed a motion to dismiss the second action, citing the prior pending action doctrine. Under the prior pending action doctrine, the trial court may dismiss an action that raises "virtually alike" issues as "a prior suit of the same character, between the same parties, brought to obtain the same end or object . . . ." (Internal quotation marks omitted.) *Cumberland Farms, Inc.* v. *Groton*, 247 Conn. 196, 216, 719 A.2d 465 (1998). That motion to dismiss remains pending before the trial court in the second action.

[9] We note that this court previously has indicated that in the absence of some seasonable objection by the opposing party to exhibits attached to a motion before the trial court for adjudication, the trial court properly may consider the attached exhibits in reaching its decision, even if the exhibits were not formally introduced into evidence by the moving party. See *Wilson*

v. *Hryniewicz*, 51 Conn. App. 627, 632–33, 724 A.2d. 531, cert. denied, 248 Conn. 904, 731 A.2d 310 (1999). In the present case, the trial court indicated that it considered the motions and memorandum of law provided by the parties in exercising its discretion to deny the motion to restore, which, absent objection, presumably included the consideration of all attached exhibits.

[10] General Statutes § 52-80 provides: "If the plaintiff, in any action returned to court and entered in the docket, does not, on or before the opening of the court on the second day thereof, appear by himself or attorney to prosecute such action, he shall be nonsuited, in which case the defendant, if he appears, shall recover costs from the plaintiff. *The plaintiff may withdraw any action so returned to and entered in the docket of any court, before the commencement of a hearing on the merits thereof.* After the commencement of a hearing on an issue of fact in any such action, the plaintiff may withdraw such action, or any other party thereto may withdraw any cross complaint or counterclaim filed therein by him, only by leave of court for cause shown." (Emphasis added.)

[11] Although the plaintiff claims that the defendant has failed to preserve or adequately brief his argument that the denial of his motion to restore divested him of a right to a bench trial, we are unconvinced. It is clear from the trial court's articulation that the issue of whether the defendant had a vested right was contemplated and decided by the court, and both parties have had a full opportunity to address the matter in their briefs and at oral argument before this court.

[12] In recognizing that there are limitations to the right of withdrawal, we are not suggesting that if a plaintiff seeks to cease litigation altogether, no matter the motivation, and withdraws an action prior to a hearing on the merits, the trial court has the authority to force a plaintiff to continue to litigate an action that he or she clearly seeks to abandon completely. Here, however, because the plaintiff filed an identical second action, she has not demonstrated that she no longer seeks to pursue litigation. It is important to note, however, that even in cases that have been withdrawn outright, with no new action filed, circumstances may arise in which the court may restore an action to the docket, not for the purpose of forcing a plaintiff to litigate a cause of action that was withdrawn as of right, but to protect important interests of parties to the litigation. See *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, supra, 276 Conn. 211–25.

[13] In discussing whether a withdrawn case should be restored to the docket to vindicate a right acquired by another party to the litigation, courts have sometimes used the term "vested right" in describing the type of right that, if affected, would warrant restoring an action. The precise meaning of that term, however, has never been defined in this context or imparted with any particular, technical meaning. In our view, a "vested right" in this context simply refers to a right acquired and presently held by a party to the withdrawn action that would be injuriously affected as a result of the withdrawal. We do not purport to decide whether other circumstances might arise that would trigger the court's authority to restore a voluntarily withdrawn action to the docket. For example, even in the absence of a vested right, a party may be significantly prejudiced by the withdrawal or the withdrawal may have an adverse effect on the due administration of justice.

[14] In *Travelers Property Casualty Co. of America* v. *Twine*, supra, 120 Conn. App. 825, the plaintiff had brought an action against the defendant, a neighbor of its insured, to recover costs incurred as a result of a tree falling onto the roof of the insured's home. After the plaintiff failed to respond to requests for admission, including that the tree in question had fallen from the insured's property, the defendant filed a motion for summary judgment. Id. Before the motion could be heard, the plaintiff withdrew the action and filed a new action against the defendant. Id. The trial court denied the defendant's motion to restore the original action to the docket, determining that, under § 52-80, the plaintiff was allowed to withdraw the action as of right, and that the defendant was not deprived of any vested right in having its summary judgment motion decided because "whether or not the tree was located on the defendant's property could be investigated through the discovery process in the subsequent action and that *any pertinent motions relating to that issue could also be addressed in that action.*" (Emphasis added.) Id., 828. This court concluded without further analysis that the court had not abused its discretion by denying the motion to restore. Id. That decision is not controlling in the present case. The defendant in *Travelers Property Casualty Co. of America* did not risk losing the right he asserted on appeal, namely to have a summary judgment motion adjudi-

cated by the court, because he could file a motion for summary judgment in the second action and could move, on a theory of estoppel, to prevent the plaintiff from asserting facts in the second action that contradicted admissions secured in the prior action, thus preserving any right the defendant had acquired in the prior litigation. By contrast, in the present case, by filing a second action, the plaintiff created a new, statutorily proscribed period in accordance with § 52-215 in which, as a matter of right, she could have the second action placed on the jury trial docket. It is unclear that the court in the second action would have any legal authority to enforce the plaintiff's prior waiver of her right to a jury trial.

[15] General Statutes § 52-212a, which provides that civil judgments may only be opened or set aside within four months of the date they were rendered, "is applicable not only to the opening of a case that has proceeded to judgment but also to the restoration of a withdrawn case." *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, supra, 276 Conn. 196. Accordingly, a motion to restore a withdrawn case is seasonable only if it is filed within four months of the withdrawal.

[16] In *Kantrowitz* v. *Clipfel*, supra, 21 Conn. Supp. 371, a malicious prosecution action, the plaintiff failed, as in the present case, to file a timely claim for a jury trial. Several weeks prior to the commencement of the scheduled court trial, the plaintiff sought to amend her complaint by adding a second count and to claim that count to the jury docket. Id., 371–72. After permission to amend the complaint was denied, she withdrew the action entirely and commenced a new lawsuit alleging the same cause of action. Id., 372. The defendants filed a motion to restore the first action to the docket, which the court granted. Id. The trial court reasoned that the defendants had acquired substantial rights in the original action, including their right to a speedy trial of the issues framed, and that "[t]he immediate commencement of a new suit for the same cause of action raise[d] a serious question of abuse of the privilege granted to a litigant under [§ 52-80]." Id., 373.

In *Nationwide Mutual Ins. Co.* v. *Blesso*, supra, 24 Conn. L. Rptr. 542, the plaintiff unilaterally withdrew its declaratory judgment action after the trial court denied a motion to sever the trial of that action from that of a tort action with which it was previously consolidated. The court granted the defendants' motion to restore the case to the docket, stating that it was "impossible to escape the conclusion that the court's [denial of the motion to sever was] the major, if not the only, reason for the withdrawal" and that the plaintiff should not be allowed "to defeat the defendants' right to a speedy, unified resolution of the serious issues raised by this action and the underlying tort action." Id.

In *Byrd* v. *Leszcynski*, supra, 28 Conn. L. Rptr. 88, the court granted a defendant's motion to restore to the docket an action that the plaintiff had withdrawn unilaterally and then refiled solely to circumvent the court's ruling precluding the plaintiff's expert witnesses. The trial court found that the plaintiff's tactical use of the withdrawal "constituted an abuse of the litigant's privilege, especially when it was used solely to avoid an order of the court, and it clearly [had] a prejudicial effect on the opposing side. . . . [T]o hold otherwise would allow a litigant to manipulate and abuse the orderly and beneficial caseflow process, which enables difficult evidentiary and procedural issues to be decided prior to trial." (Citations omitted) Id., 89.

[17] The fact that neither party timely filed a certificate of closed pleading in this case had no effect on the running of the time period set forth in § 52-215 for claiming the matter to the jury docket. According to § 52-215, the ten day period begins to run when an "issue of fact is joined." Although the joining of issues may coincide, at the latest, with the closing of the pleadings, there is no direct linkage in the statute between the filing of a certificate of closed pleadings and the claiming of an action to the jury docket.